SARAH W. FILER, Plaintiff, *v.* FREDERICK G. WEISSER, as Mayor of the Village of Great Neck Estates, et al., Defendants.

Supreme Court, Special Term, Nassau County, May 7, 1946.

*Henry Albert* for plaintiff.

*Conklin & Bentley* for defendants.

C. A. JOHNSON, J. This is an action by the plaintiff, as a taxpayer of, and real property owner in the village of Great Neck Estates, Inc., in the town of North Hempstead, county of Nassau, State of New York, against the Board of Trustees and Acting Sewer Commissioners of that village, for a judgment declaring a certain assessment and apportionment for the construction and installation of a sewer null and void, canceling and setting aside the said assessment and apportionment, as well as the lien created thereby against her property and directing the repayment to her of an installment of the assessment paid by her under protest.

Stripped to its essentials, the vital issue in the case narrows down to this: Did the Village Board have power to construct the so-called "Deepdale sanitary sewer" to serve some sixteen parcels of property within the village, connect the same with the sewer system of the adjoining sewer district, contract with the latter to receive and dispose of the sewerage, and charge the cost thereof partly on the village and partly against the sixteen parcels benefited?

The plaintiff denies the existence of such power because of the failure of the village to comply with the requirements of section 260 *et seq.* of the Village Law. If her contention is valid, a village may not construct any sewer unless and until it shall have complied with the provisions of section 260 of the Village Law.

That section requires the adoption and approval of a plan for a "complete sewerage system" which must be "comprehensive" and "cover all portions of the village". A "sewerage system" means "a complete system for the removal, treatment or disposal of sewerage or waste water." Only after such a plan has been approved and adopted may the village proceed to construct sewers, and then only after adoption of a proposition at an election or subject to a referendum. Thus procedure under section 260 would require: (1) Preparation of a plan for a complete and comprehensive system covering the entire village which would necessitate, first, a budgetary appropriation of no inconsiderable amount. (2) Approval thereof by the local and State health departments. (3) Construction of all or part thereof only after an election or subject to a referendum at which a majority of the qualified electors approve the same.

The time and expense involved and the possible failure to obtain electoral approval make procedure under section 260 a poor sort of remedy where a situation exists which calls for prompt action.

Was there no other remedy available where, as in this case, adequate disposal facilities existed throughout the village except with respect to the small area here involved which lay adjacent to an existing sewer system of an adjoining sewer district?

The establishment of a sewer district within the village to include the area in question pursuant to section 260-c of the Village Law would avoid none of the difficulties presented by section 260. So, too, if section 276 of the Village Law permitting the village to contract with the sewer district to connect the sewers of the villagn with those of the district is applicable, nevertheless, such a contract is subject to electoral approval. Whether the village might have proceeded under the provisions of section 120 *et seq.* of article 6 of the General Municipal Law is doubtful. In any event, it did not so proceed and does not rely upon those provisions to sustain its action.

On the contrary, it acted solely pursuant to, and relies solely upon the provisions of section 21-a of the Public Health Law.

That statute was enacted in 1913 (L. 1913, ch. 559, § 11). At that time, section 120 *et seq.* of the General Municipal Law was not available. The only provision for sewers in a village at that time were those of section 260 *et seq.* of the Village Law, which required (1) an appropriation of funds necessary to prepare the comprehensive plan; (2) preparing the same and obtaining its approval; (3) obtaining the approval of the electorate before proceeding with construction.

It may be significant that the Legislature, in enacting in 1913 a statute relating solely to sewers in villages, made that statute not a part of the article of the *Village Law* relating to sewers (§ 260 *et seq.*) which it left unamended, but made it a part of the *Public Health Law* and incorporated it therein as section 21-a.

It was limited strictly to situations where the health authorities should deem " the sewers of such village " insufficient not only (1) " to properly and safely sewer such village " but, also, (2) to " protect the public health ".

Thus procedure thereunder was available only when protection of the public health was involved and required.

The plaintiff urges, nevertheless, that because of the use of the words and phrases " sewers of such village " and " additions or alterations ", it is necessarily to be inferred that the Legislature intended section 21-a of the Public Health Law to apply only to a village which had theretofore complied with section 260 of the Village Law. The latter section deals only

with a " complete sewerage system ", a " permanent sewerage system ", which " shall be comprehensive and shall cover all portions of the village ".

Whether such a plan has been adopted and approved, and then defeated at the polls, or whether no such plan has ever been adopted, in either case there are no " sewers of such village " (Public Health Law, § 21-a). That section is significantly silent with respect to any " comprehensive plan ", and logically so; because if, for any reason, the " comprehensive plan " approved by the State Department of Health later proves inadequate, it may be amended and, as amended, approved under section 260 of the Village Law. Therefore, if the word " sewers ", as used in section 21-a of the Public Health Law, be taken to mean only sewers constructed according to the approved " comprehensive plan ", any insufficiency could be remedied by the Village Board and the powers granted in section 21-a would be unnecessary.

Again, if the phrase " sewers of such village " (Public Health Law, § 21-a) be taken to mean only sewers shown on the approved " comprehensive plan ", approval by the State Department of Health under section 21-a would be quite unnecessary, since they had already been approved by that department in its approval of the " comprehensive plan ". That " sewers " may exist in a village which have been constructed without the " comprehensive plan " is recognized by the provision of section 260 of the Village Law that such plan " may * * * include any existing sewer in the village ".

Thus if any sort of sewer, whatever its nature and origin, exists, it may be incorporated into the " comprehensive plan " if found feasible and approved by the State Department of Health. It surely follows that, if a sewer be constructed under section 21-a with the approval of that department, and a " comprehensive plan " is subsequently adopted including such sewer, that plan must necessarily be approved by the State Department of Health.

In the present case, the County Department of Health determined that there existed, in the area in question, " a condition prejudicial to the public health and in violation of the provisions of the Nassau County Public Health Ordinance "; that the village was " insufficiently sewered " with respect to that area; that construction of the proposed sanitary sewer was necessary for the abatement of those conditions; that it would not interfere with later preparation of a " comprehensive system "; and it certified and recommended to the State Depart-

ment of Health accordingly. That department, after consideration, and reciting that the proposed construction was necessary " for the abatement of a condition prejudicial to the public health " and would not " conflict with the ultimate preparation of a comprehensive system of sewerage " for the village, approved the recommendations by virtue of the provisions of section 21-a. Therefore, by virtue of the provisions of that section, it became " the duty of the board of trustees * * * of such village * * * *whether sufficient funds shall be on hand for such purpose or not, to forthwith make such additions to or alterations in the sewers of such village and execute such recommendations * * *.*" (Italics supplied.) Emphasis is supplied to the words italicized because they seem to me to answer the question of the purpose and intent in the enactment of section 21-a.

It must be kept in mind that the health department here determined, not merely that the sewers were insufficient " to properly and safely sewer such village ", but that they were insufficient to " *protect the public health* " (italics supplied). The determination was, in effect, that a public nuisance existed which, to protect the public health, must be abated. The departments then recommended the method of abatement, whereupon the Village Board was released from the usual requirements of budgetary appropriation, preparation and approval of a " comprehensive plan " and authorization by the electorate to proceed with construction; and was, on the contrary, not only authorized, but burdened with the " duty * * * to forthwith * * * execute such recommendations * * *."

That is language which is mandatory. And it is language which is extraordinary because it removes from the discretion of the Village Board and the village electorate a power of local self-government which would otherwise be theirs. It seems to me that they are overridden for one reason only, namely, that they are superseded by the superior authority of the Health Department when a situation exists which requires the protection of the public health by the abatement of a public nuisance.

The question of the apportionment of the local assessments for the sewer, made by the Board of Trustees of the Village of Great Neck Estates, Inc., constituting the Board of Sewer Commissioners thereof, has heretofore been passed upon.

Judgment for the defendants on the merits, without costs. Submit judgment accordingly.